```
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TROY BRITT,                      )
                                 )
              Plaintiff,         )         9:06-CV-633 (LES)
                                 )
        v.                       )
                                 )
CHERYL FAWCETT and               )         MEMORANDUM AND ORDER
TIMOTHY REED,                    )
                                 )
              Defendants.        )
                                 )
_____)
```

## I. INTRODUCTION

This matter is before the Court on defendants' motion for summary judgment (Doc. 42). Upon review of the motion, the memoranda and evidentiary submissions of the parties, and the applicable law, the Court finds that the motion should be granted in part and denied in part.

## II. BACKGROUND

At all times relevant to this lawsuit, plaintiff Troy Britt ("Britt") was incarcerated at Bare Hill Correctional Facility ("Bare Hill") and held in the custody of the New York State Department of Correctional Services ("DOCS") (Doc. 42-10, ¶ 1). On October 24, 2005, Britt was involved in a fight with two other inmates, Lindsay Thomas and Brying Ham, in the recreation area of G-1 dorm at Bare Hill (Doc. 44-2, ¶¶ 4-5). As a result of the incident, two inmate misbehavior reports were issued against Britt, and Britt was charged with several violations of prison rules (*See* Doc. 42-7 at 14-15).

Officer Timothy Gravlin drafted one of the misbehavior reports (Doc. 42-7 at 14).  Gravlin was the dorm officer assigned to G-1 dorm on the date of the incident (Doc. 42-10, ¶ 6).  According to Gravlin's Report, Gravlin was signing out inmates going to the yard at approximately 7:45 p.m. when he heard a loud commotion in the recreation area (Doc. 42-7 at 14).  Upon investigation, Gravlin saw Britt holding Thomas with one hand and hitting Thomas with the other hand; Ham was also hitting Thomas. (Doc. 42-7 at 14; Doc. 42-10, ¶¶ 7-8).  Gravlin gave the inmates a direct order to break up the fight, but they did not comply (Doc. 42-7 at 14).  Gravlin pulled the pin on his radio and gave them another direct order to break up the fight, which they did at that time (Doc. 42-7 at 14).  Britt then ran into the dorm area (Doc. 42-7 at 14).  The report charged Britt with 100.13 fighting, 106.10 disobeying a direct order, 104.11 violent conduct, and 104.13 creating a disturbance (Doc. 42-7 at 14).

In addition to the report, Gravlin drafted a memorandum that was directed to defendant Sergeant Timothy Reed (Doc. 42-7 at 13).  The memorandum states Gravlin was signing out inmates when he heard a loud thump in the recreation area, observed a mop handle sliding across the floor towards the dorm area door, and then witnessed three inmates fighting (Doc. 42-7 at 13).

Defendant Reed drafted the second misbehavior report issued against Britt (Doc. 42-7 at 15).  Reed was assigned to the

position of housing sergeant in the main area of the facility on the night of the incident (Doc. 42-10, ¶ 13). According to Reed's report, Reed conducted an investigation of the incident "which included an interview with Officer T. Gravlin and confidential information received" (Doc. 42-7 at 15). As a result of the investigation, Reed concluded that Britt was the aggressor in the incident and assaulted Thomas with a wooden mop handle (Doc. 42-7 at 15). Reed's report charged Britt with 100.10 assault on an inmate and 113.10 possession and use of a weapon (Doc. 42-7 at 15; Doc. 42-10, ¶ 35).

At approximately 8:10 p.m. on the night of the incident, Britt was escorted to the infirmary (Doc. 42-10, ¶ 27). According to the inmate injury report form, Britt reported that he was in his cube at the time the incident occurred (Doc. 42-10, ¶ 28). After medical staff completed Britt's medical work-up, Britt was interviewed by Reed, and according to Reed, Britt denied any knowledge of the incident (Doc. 42-10, ¶ 29). Thereafter, Britt was escorted to the special housing unit ("SHU") (Doc. 42-10, ¶ 30). According to Britt, Reed escorted Britt to SHU and verbally harassed Britt during the escort (Doc. 44-2, ¶ 15; Doc. 1 at 4-5).

On October 26, 2005, Officer Poupore delivered the misbehavior reports to Britt (Doc. 42-10, ¶ 36). At that time,

Britt marked and signed a document indicating he was waiving his right to an employee assistant (Doc. 42-3; Doc. 42-10, ¶ 37).

On October 28, 2005, defendant Cheryl Fawcett conducted a Tier III disciplinary hearing (Doc. 42-4).  Fawcett read the misbehavior reports, Gravlin's memorandum, and the charges to Britt (Doc. 42-4 at 3-5).  Britt pled guilty to creating a disturbance, fighting, and disobeying a direct order; Britt pled not guilty to violent conduct, assault on an inmate, and possession and use of a weapon (Doc. 42-4 at 4-5).

Britt offered his explanation of the incident (Doc. 42-4 at 6).  Britt admitted to hitting Thomas with a fist but denied hitting Thomas with a weapon (Doc. 42-4 at 6).  Gravlin testified regarding the contents of his report and memorandum (Doc. 42-4 at 7-10).  Gravlin stated that he did not see Britt throw the mop, but he concluded the mop came from Britt because of the positions of the inmates (Doc. 42-4 at 9).

Reed testified outside the presence of Britt (Doc. 42-4 at 17-19).  Fawcett informed Britt that Reed had prepared a confidential memorandum, and therefore, Fawcett would have Reed testify on a confidential tape (Doc. 42-4 at 10-11).  Reed testified that he interviewed Thomas, and Thomas stated Britt attacked him with a mop handle (Doc. 42-4 at 17).  Reed also received information from a confidential inmate who witnessed the

incident and lived in the same housing unit as Britt and stated Britt was the perpetrator of the incident (Doc. 42-4 at 17-18).

At the completion of Reed's testimony, Fawcett continued the hearing in Britt's presence (Doc. 42-4 at 11). Fawcett told Britt that she could not provide Britt the information contained in Reed's confidential memorandum or allow Britt to listen to the confidential tape due to concerns for prison safety (Doc. 42-4 at 12). Fawcett told Britt that Reed had received information from "somebody on the dorm" but she could not reveal the person's identity because that "would subject that person to serious physical harm or even death for cooperating with prison officials" (Doc. 42-4 at 12).

Fawcett proceeded to find Britt guilty on all charges (Doc. 42-4 at 13-14). Britt was sentenced to 365 days in SHU, loss of recreation, packages, commissary, phone, and special events for 365 days, and a recommended loss of 12 months good-time (Doc. 42-5; Doc. 42-4 at 14). Fawcett gave Britt a statement of the evidence relied upon in reaching her determination and the reasons for the disposition (Doc. 42-5).

Britt asserted this action *pro se* pursuant to 42 U.S.C. § 1983. Britt's complaint states a claim against Reed for verbal harassment, and a claim against Fawcett for violations of Britt's due process rights. Defendants have moved for summary judgment accordingly.

-5-

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A fact is material when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must view the evidence in a light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor.  *See Matsushita Elec. Indus.*, 475 U.S. at 587.  However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In addition, because Britt is a *pro se* litigant, the Court must construe Britt's complaint and brief liberally, reading the submissions "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).

## IV. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. *Verbal harassment claim*

The complaint alleges Reed escorted Britt to SHU after the inmate fight, and during the escort, Reed verbally harassed Brit by making verbal threats and derogatory remarks (Doc. 44, ¶ 4; Doc. 1). Reed argues the claim should be dismissed on the following grounds: (1) the alleged conduct does not give rise to any constitutional violation, or alternatively, Reed is entitled to qualified immunity, and (2) Reed was not personally involved in any violation. The Court finds the alleged conduct does not give rise to a § 1983 claim, and therefore, the Court does not reach the issue of personal involvement.

Generally, verbal harassment by itself is not actionable under 42 U.S.C. § 1983. *See Gill v. Hoadley*, 261 F.

-7-

Supp. 2d 113, 129 (N.D.N.Y. 2003)("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse"); *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997)(finding the plaintiff's claim of racial slurs reflecting racial prejudice could not form the basis of a claim under § 1983); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)(verbal harassment, "'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983")(quoting *Del Carpio v. Walker,* No. Civ. A. 95 Civ. 1502(RSP)(GJD), 1997 WL 642543, at * 6 (N.D.N.Y. Oct. 15, 1997)).

In the harshest of circumstances, verbal harassment may amount to cruel and unusual punishment in violation of the Eighth Amendment. *Greene v. Mazzuca*, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007). A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the deprivation alleged must be, objectively, "sufficiently serious," such that the prisoner is denied "the minimal civilized measure of life's necessities." *Id.* (citations omitted). Second, the prison official must have acted with a "sufficiently culpable state of mind." *Id.*

Here, Britt has failed to offer sufficient evidence of an actionable § 1983 claim. Taking Britt's allegations as true,

-8-

Britt was verbally harassed on one occasion during the period of time it took to be escorted to SHU; Britt does not allege the conduct was accompanied by any physical harassment.  No reasonable jury could find this conduct was "sufficiently serious" such that it denied Britt "the minimal civilized measure of life's necessities."  Further, Britt has not offered sufficient evidence of any injury or damage resulting from the harassment.  *See Greene*, 485 F. Supp. 2d at 451 (plaintiff must show some injury or damage resulting from the alleged harassment to state a claim under § 1983).  While the complaint generally asserts that Britt suffered "pain and stress," Britt has not offered sufficient evidence to substantiate this allegation.  In light of the foregoing, Britt's allegations of verbal harassment do not rise to the level of a § 1983 claim, and Reed is entitled to summary judgment on Britt's verbal harassment claim.

***B. Due Process Claims***

Britt alleges Fawcett denied him procedural due process during his Tier III disciplinary hearing.  Fawcett asserts the following arguments as to why Britt's due process claims should be dismissed: (1) the claims are barred by *Heck*, and (2) Britt received all the process he was due, or alternatively, Fawcett is entitled to qualified immunity.

### 1. *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that a claim for damages is not cognizable under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Subsequently, the Court clarified that *Heck* applies when a prisoner asserts a § 1983 claim that challenges the procedures used during a disciplinary hearing that results in the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 645-648 (1997).

Fawcett claims Britt's due process claims are barred by *Heck* because the disciplinary hearing resulted in a recommended loss of good-time credits, and Britt cannot show the sentence has been invalidated. The Court disagrees. Based on the record before the Court, it is not clear that Britt's disciplinary hearing actually resulted in the loss of good-time credits. *See* Doc. 42-4 at 14; Doc. 42-10, ¶ 57 (Fawcett imposed a sanction of "recommended" loss of good-time credits). In the event that Britt did not actually lose good-time credits, a judgment in favor of Britt would not necessarily imply the invalidity of Britt's conviction or sentence, and therefore, *Heck* would not bar Britt's § 1983 action. *See Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999)(finding *Heck* does not bar a § 1983 claim that

challenges sanctions which do not effect the length of a prisoner's sentence).

Even if defendants offer additional evidence which shows that good-time credits were actually revoked, Britt would be able to pursue his § 1983 claim provided the requirements established in *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006) are satisfied. In *Peralta*, the Second Circuit determined that if a disciplinary hearing results in a prisoner receiving "mixed sanctions" (i.e. sanctions which effect the length of the prisoner's sentence, e.g. loss of good-time credits, and sanctions which do not effect the length of the prisoner's sentence, e.g. disciplinary segregation), a prisoner can challenge the sanctions which do not effect the length of confinement in a § 1983 action if the prisoner agrees to abandon "any duration of imprisonment claims arising out of the same disciplinary process." *Id.* at 105-106.

It is evident from Britt's complaint and memorandum that Britt's § 1983 claim only challenges sanctions which effect the conditions of his confinement and not the length of his confinement. Thus, if Britt's disciplinary hearing resulted in the loss of good-time credits, Britt can still proceed with his § 1983 claim challenging the sanctions which do not effect his conviction or length of confinement if Britt agrees to abandon all claims challenging the loss of good-time credits. Based on

the foregoing, material issues of fact exist as to whether Britt's claim is barred by *Heck*.

## 2. *Due Process Rights*

To state a claim for the denial of due process, "a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). Defendants do not challenge that Britt possessed a protected liberty interest, and therefore, the Court will assume for purposes of this summary judgment motion that Britt's 298-day confinement in SHU was sufficient to implicate a protected liberty interest (*See* Doc. 44-3 at 8). The disputed issue is whether Britt received all the process he was due.

An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to present evidence; (3) a written statement of the evidence relied on by the hearing officer and the reasons for the action; (4) a fair and impartial hearing officer; (5) at least "some evidence" in the record that supports the hearing officer's findings; and (6) in some circumstances, the right to an assistant in preparing a defense. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989); *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Silva v. Casey*, 992 F.2d 20, 22 (2d

Cir. 1993).  Britt does not dispute that he received advance written notice of the charges and the opportunity to present evidence.

### *The right to know the evidence relied on by the hearing officer*

An inmate is entitled to know the evidence relied on by a hearing officer.  *Francis*, 891 F.2d at 47; *see also Sira v. Morton,* 380 F.3d 57, 74-75 (2d Cir. 2004).  The right, however, is not absolute as institutional safety concerns may provide a sufficient reason for a hearing officer to decline to inform the inmate of adverse evidence.  *Francis*, 891 F.2d at 47.  Nonetheless, a hearing officer's decision to withhold evidence is not unreviewable.  *Sira*, 380 F.3d at 75.

Here, the hearing disposition form indicates Fawcett relied in part on Reed's testimony and Reed's confidential memorandum, but the form does not state the contents of this evidence, nor was the majority of the contents of this evidence disclosed to Britt during the disciplinary hearing.  Genuine issues of material fact exist as to whether Britt's right to know the contents of this evidence was violated.

Further, Fawcett is not entitled to qualified immunity on this issue at this stage of the litigation.  An inmate's right to know the evidence against him was clearly established at the time of the disciplinary hearing, *see Francis*, 891 F.2d at 47, and based on the record before the Court, genuine issues of

material fact exist as to whether non-disclosure of all of the evidence was objectively reasonable.  Accordingly, Fawcett is not entitled to summary judgment on this issue.

### *The right to a fair and impartial hearing officer*

While an inmate is entitled to a fair and impartial hearing officer, "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally."  *Id.* at 46.  Conclusory allegations of bias and prejudice are insufficient to overcome a properly supported summary judgment motion.  *Id.* at 47.

While the complaint makes general assertions of Fawcett's bias and prejudice, Britt has failed to support these allegations with sufficient evidence to establish a material issue of fact, and Fawcett is entitled to summary judgment on the issue of whether Britt received a fair and impartial hearing officer.

### *Some evidence supporting the hearing officer's findings*

The Second Circuit has interpreted the right to have a hearing officer's findings supported by "some evidence" to mean some "reliable evidence."  *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).  When a hearing officer relies on hearsay evidence to satisfy this standard, the hearing officer must engage in an independent assessment of the credibility of the evidence.  *See id.* at 489-490; *Sira*, 380 F.3d at 77-78.

-14-

Here, Fawcett found Britt guilty of the charges of fighting, failing to follow a direct order, creating a disturbance, assault, violent conduct, and use of a weapon. Britt pled guilty to fighting, failing to follow a direct order, and creating a disturbance. Therefore, Fawcett's determination of guilt on these charges was adequately supported. With regard to Fawcett's findings on the remaining charges, Fawcett's findings are adequately supported by non-hearsay evidence in the record. Moreover, Fawcett's findings are bolstered by hearsay testimony, which Fawcett was entitled to rely on.

Britt admitted to hitting Thomas with his fist in the face and/or chest. Gravlin testified that he saw a mop handle sliding across the floor and concluded from the inmates' positions that the mop handle came from Britt, and Gravlin's report and memorandum stated his personal observations of the fight. This evidence provides "some reliable evidence" of Fawcett's findings on the remaining charges.

In addition, the record supports a finding that Fawcett independently assessed the credibility of the information provided by the confidential inmate and Thomas. A hearing officer must consider the totality of the circumstances to determine the reliability of hearsay information. *See Sira*, 380 F.3d at 78. The record reveals Fawcett inquired into the confidential inmate's record for reliability, and while Reed did

not know the inmate's record for reliability, he testified the inmate was an eye witness to the incident, was not subject to any disciplinary action for the incident, volunteered the information, and was not given any preferential treatment for his information.  Further, the record indicates that Thomas's information was corroborated by other evidence in the record; specifically, Gravlin's observations and conclusions regarding the mop and the confidential inmate's statements that Britt was the perpetrator of the incident.  Based on the totality of the evidence in the record, Fawcett was entitled to conclude that the information provided by the confidential inmate and Thomas was reliable.  In light of the foregoing, Fawcett's findings were supported by "some reliable evidence" in the record, and Fawcett is entitled to summary judgment on this issue.

***The right to an assistant***

There is no genuine dispute that Britt waived the right to an assistant.  Prior to the disciplinary hearing, Britt marked and signed a document indicating he waived his right to an employee assistant, and Britt has not offered sufficient evidence to establish the waiver was invalid.  Accordingly, Fawcett is entitled to summary judgment on this issue.

**V. CONCLUSION**

IT IS ORDERED:

1)  Reed's motion for summary judgment on Britt's § 1983 claim based on alleged verbal harassment is granted.

2)  Fawcett's motion for summary judgment on Britt's § 1983 based on alleged due process violations is denied with regard to the issue of non-disclosure of evidence relied on by Fawcett and is granted in all other respects.

DATED this 31st day of March, 2009.

                BY THE COURT:

                /s/ Lyle E. Strom
                _____
                LYLE E. STROM, Senior Judge
                United States District Court